| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE NOBLE COUNTY SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF NOBLE | ) | CAUSE NO. |

| | |
|---|---|
| JME EASH FARMS | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| RYDER INTEGRATED LOGISTICS, INC | ) |
| Defendant | ) |

## COMPLAINT AND REQUEST FOR DAMAGES

Plaintiff JME Eash Farms, Inc. ("Plaintiff" or "Eash Farms") brings this suit against Defendant Ryder Integrated Logistics, Inc. ("Defendant" or "Ryder") arising out of Ryder's trespass on Eash Farms' property and damages arising therefrom. Plaintiff states in support as follows:

### Parties

1. Eash Farms is a corporation with its principal place of business in Indiana.
2. Ryder is a corporation doing business in Indiana.

### Jurisdiction & Venue

3. Plaintiff is located in Noble County, Indiana.
4. The events of this dispute took place in Noble County, Indiana.
5. The property in question is located in Noble County, Indiana.
6. This Court has jurisdiction to hear this dispute under the laws of the state of Indiana.
7. This Court is the proper venue for this dispute.

### Background Facts

8. On or about August 14, 2024, Ryder drove onto a farm lane through Eash Farm.
9. Ryder did not have permission to use this farm lane.
10. The entrance to this lane was marked with a "Private Property" or "Do Not Trespass" sign.
11. Ryder's truck collided with a piece of irrigation equipment.
12. The irrigation equipment was dragged and damaged by Ryder's truck.

13. Other property at Eash Farms was damaged by Ryder's truck as it dragged the irrigation equipment.
14. Ryder drove away from the damaged property.
15. Eash Farms discovered the damage the next morning.
16. Ryder returned to Eash Farm and explained what happened.
17. Ryder directed Eash Farms to communicate with GM-Consulting ("GMC") regarding damages.
18. Eash Farms obtained two quotes for the irrigation system, one for repair and one for replacement. Exhibit A – Estimates.
19. Eash Farms shared these quotes with GM-Consulting on behalf of Ryder.
20. Eash Farms explained that repair was not a realistic option because of the timing and extent of the damage.
21. Eash Farms explained the urgency of getting a working irrigation system as quickly as possible in order to prevent crop loss.
22. Eash Farms explained that there was likely to be more damage than the estimate showed (i.e. hidden damage).
23. The unknown damages to the irrigation system were likely to cause at least an additional $20,000 in repair cost, in addition to lost time and crop loss.
24. Eash Farms explained that the repair option would add uncertainty for the future.
25. Eash Farms explained that they did not want their repaired irrigation system to break down in the middle of summer due to hidden damage.
26. The difference in prices between a new irrigation system in August and the repair estimate was less than $20,000.
27. A new irrigation system likely could have been delivered and installed in August in time to prevent any crop loss.
28. Eash Farms offered to settle all claims arising out of the trespass if Ryder purchased a new replacement irrigation system.
29. Eash Farms' proposal was designed to put a limit on the damages arising out of Ryder's trespass.
30. Ryder declined to buy Eash Farms a new irrigation system in accord with the estimate.
31. Ryder declined to let Eash Farms pay the difference between the repair price and the replacement price.
32. GMC told Eash Farms that Ryder would not pay the entire cost of repair.
33. GMC expressed concern that Ryder could not leave Eash Farms better off after the accident than it was before the accident because Ryder was partially self-insured.
34. GMC told Eash Farms that insurance regulations prevented them from paying any more than the "actual cash value" of the damaged irrigation system.
35. "Actual cash value" as GMC defined amounted to less than 20% of the cost of repair.
36. GMC's proposed compensation formula would impose a $100,000+ cost on Eash Farms in order for them to have a working irrigation system again.

37. Ryder has not given anything to Eash Farms to compensate them for the loss of the irrigation system.
38. Eash Farms was deprived of a working irrigation system during a hot portion of the late summer season, when the need for water was critical.
39. The lack of a working irrigation system caused Eash Farms to lose crop productivity.
40. The failure to replace the irrigation system threatens to cause Eash Farms crop loss going forward into the 2025 growing season.
41. After the trespass, Eash Farms repeatedly made contact with Ryder representatives in attempts to mitigate the damages arising out of Ryder's trespass.
42. After the 2024 harvest, Eash Farms provided Ryder with detailed accounts of its property damage, crop losses, and other damages arising out Ryder's trespass.
43. Ryder responded to say that they would not pay the cost to repair the irrigation system; instead, they would only part of the cost to repair or replace the irrigation system.
44. Ryder insisted that they would not pay any more than the "actual cash value" of the irrigation system at the time of the damages.
45. Ryder also refused to pay anything for the crop losses or other damages incurred by Eash Farms.
46. Eash Farms asked Ryder what other documentation Ryder would like to support Eash Farms' losses.  Ryder did not respond to this inquiry.
47. Eash Farms requested that Ryder provide them with legal authority supporting their position.  Ryder has never provided any legal authority that supports their position.
48. Ryder represented that they believe Ryder is not required to compensate Eash Farms for all the damages arising out of the trespass.
49. In a further attempt to mitigate damages, Eash Farms agreed to a pre-litigation mediation session, in which they participated on February 27, 2025.
50. Despite significant efforts and abundant good faith by Eash Farms, the parties' positions remain too far apart for a successful negotiation.
51. Eash Farms has no reason to believe that Ryder will ever negotiate in good faith, and therefore Eash Farms requires the assistance of the Court to definitively resolve this dispute.

## CLAIM I. TRESPASS

52. Incorporate by reference all the preceding paragraphs as if all pertinent facts are fully stated herein.
53. Eash Farms did not owe any duty to Ryder.
54. Ryder was engaged in a commercial enterprise for profit when it came onto the Eash Farms property.
55. Ryder did not have explicit or implicit permission to be on the Eash Farms property.
56. Ryder had implicit and explicit notice that it did not have permission to be on the Eash Farms property.
57. Ryder did not need to use the Eash Farms property.

58. Ryder negligently or recklessly drove through the Eash Farms property.
59. Ryder's trespass on Eash Farms property caused damage to Eash Farms and others.
60. Eash Farms is entitled to be made whole for all the damages arising out of Ryder's trespass.
61. The irrigation system was damaged by the collision with Ryder's truck.
62. The collision of Ryder's truck and the irrigation system left dangerous debris on the farm lane.
63. Eash Farms spent resources to clean up and remove the debris left from the collision.
64. Eash Farms incurred expenses to disassemble and remove the damaged irrigation system.
65. Eash Farms attempted to mitigate the damages caused by the collision.
66. Ryder's failure to repair or replace the irrigation system caused Eash Farms to sustain the crop loss damages.
67. Eash Farms has suffered at least $120,000 in damages to the irrigation system.
68. Eash Farms has suffered at least $70,000 in crop loss damages.
69. Eash Farms has suffered at least $31,000 in expenses arising out of the collision.
70. Eash Farms has suffered other consequential damages as a result of Ryder's trespass.
71. Eash Farms is likely to sustain further damages arising out of the damage to the sprinkler system.

WHEREFORE, Plaintiff Eash Farms respectfully requests that the Court grant judgment with respect to its claim for Trespass against Ryder, and enter an order requiring Ryder to compensate Eash Farms for all the damages arising out of and caused by Ryder, including the costs of repair and remediation to the farm lane and surrounding area, the damages to the irrigation system, and resulting crop loss damages.

Respectfully Submitted:

Andrew J. Chabot (34537-71)
Botkin & Hall, LLP
1003 North Hickory Rd.
South Bend, IN 46615
Phone:  (574) 234-3900
Fax:  (574) 236-2839
achabot@bhlawyers.net